UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEDRIC GOLDEN,

            Petitioner,

   -vs-

JOHN P. LEMPKE, Superintendent


            Respondent.

_____

**DECISION AND ORDER**

**No. 08-CV-6428T**

## I.  Introduction

*Pro se* petitioner Dedric Golden ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 2, 2005, in New York State, County Court, Chemung County, convicting him, after a jury trial, of one count of Assault in the First Degree (N.Y. Penal Law ("Penal Law") § 120.10 [3], and two counts of Criminal Possession of a Weapon in the Third Degree (Penal Law §§ 265.02 [1], [4]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

### A.    Introduction

On an evening in May, 2005, Johnny Samuels ("Samuels") let Petitioner into his apartment building to allow him to knock on the

door of Michael Thompson ("Thompson"), Petitioner's cousin, who also lived in the apartment building. Once inside the building, Petitioner pointed a gun at Samuels. When Samuels' dog, Hank, walked into the hallway and lunged at Petitioner, Petitioner shot Hank. Petitioner then fired a shot into Samuels' apartment, striking Samuels' pregnant girlfriend, Santana Parker ("Parker"), in her torso. Parker lost her baby as a result of her gunshot wound. Hank was euthanized as a result of his gunshot wound.

On June 16, 2005, a Chemung County Grand Jury charged Petitioner with one count of First Degree Assault, two counts of Third Degree Weapons Possession, one count of Second Degree Weapons Possession, and one count of Injuring an Animal. See Ind. No. 2005-188 (Resp't Ex. B at 5-7).

On October 11, 2005, a jury trial commenced before the Hon. James T. Hayden.

**B. The Trial**

**1. The People's Case**

In May 2005, Samuels and Parker lived with their dog Hank in an "efficiency" apartment building at 863 Magee Street in Elmira, New York. The three-story apartment building had multiple units and a shared bathroom, which was located on the second floor, next to Thompson's apartment unit. Trial Trans. [T.T.] 152-154, 159, 161-162, 233.

Shortly after midnight on May 8, 2005, Samuels and Parker were

to retire for the day when the bell rang at the main door.  Samuels looked outside his window and saw Petitioner, who he knew to be Thompson's cousin.  Petitioner asked if Thompson was home.  Samuels had met Petitioner about four times in the past month.  When they had met, Samuels had loaned Petitioner cigarettes and $16, and they had "rapped" in Samuels' apartment.  T.T. 161-167, 233.

Samuels did not know if Thompson was home, so he went downstairs and let Petitioner in to knock on Thompson's door.  Petitioner entered the building, and Petitioner and Samuels walked to the second floor together.  Samuels used the bathroom, and Petitioner knocked on Thompson's door.  When Samuels exited the bathroom, Petitioner pulled a gun from his waist.  Petitioner asked Samuels, "you know what this is?"  He and Petitioner were face to face; Petitioner wore a beige or brown hat and a blue jacket with yellow streaks.  Samuels moved toward Thompson's open apartment door and into Thompson's apartment.  Inside, Samuels' nephew, Donald Cox, Jr. ("Cox"), was laying on a couch.  Petitioner pointed the gun at Samuels and then at Cox.  Petitioner yelled "gibberish" at the two men, who told him to calm down.  Hank (the dog) then walked downstairs and lunged at Petitioner, and Petitioner shot Hank.  T.T. 168-169, 171, 172-174, 176-180, 223, 226.

Fearful of being shot, Samuels put his hands in the air and indicated to Petitioner that he could have whatever he wanted.  Petitioner led Samuels to the stairs and Samuels walked up three or

four steps and then ran up the remaining stairs in the flight. Petitioner, however, blocked Samuel from closing his apartment door and pushed his way into Samuels' apartment. From inside the dark apartment, Parker saw Samuels push against the door, and watched Samuels slide to the floor in an effort to keep Petitioner from entering the apartment. Glenn Doty ("Doty"), who lived in the apartment next-door to Samuels, heard the commotion and thought Samuels was wrestling with Hank. T.T. 181-183, 185-186, 227, 236, 246-247.

Petitioner fired the gun into the apartment, and then ran off. Doty ran to his window and saw a man wearing a blue coat with yellow "possibly" near the sleeves who walked south on Magee Street minutes after he heard the gunshot. T.T. 188, 236, 245, 248-250.

Samuels called 911 and also asked a neighbor to call the police. Samuels then ran to another tenant, Chris Slater ("Slater"), and asked him for a weapon. Armed with Slater's pool cue, Samuel returned to his own apartment unit. There, Parker told Samuels that she had been shot. Samuels applied pressure to the wound on her torso until an ambulance and the police arrived. T.T. 188-189.

The police arrived at about 1:00 a.m. Some officers set up a perimeter in the streets surrounding the building. Inside the apartment building, Officer Williams encountered Hank, who was badly injured, lying down on the floor hallway and remained with

him.   Officer Williams spoke to Samuels, who was so distraught about his girlfriend and his dog, that he was unable to provide many details about what had occurred.   T.T. 278-282.

An Animal Control Officer came to the apartment building, examined Hank, and then brought him to an on-call veterinarian. Hank was eventually euthanized as a result of the fatal injuries he sustained from the gunshot wound.   Three bullet fragments were removed from the deceased dog and given to police.   T.T. 322-323, 326-329.

Parker was eventually airlifted to Strong Memorial Hospital where she underwent surgery for her injuries.   As a result of her injuries, she lost her baby.   While Parker was being transported to Strong Memorial Hospital, Samuels met with the police and viewed photographs and was able to identify Petitioner from the police photographs.   Petitioner's photograph was then distributed to police.   T.T. 192, 242, 269, 283.

Officer Williams brought Petitioner's photograph to Officer Mustico, who was watching a house on Washington Avenue where Petitioner was believed to be.   Officer Mustico told Officer Williams that he had seen Petitioner in front of a Dunkin' Donuts bakery across the street from the house he was watching.   T.T. 283-284.

At about 6:00 a.m., Officer Williams approached Dunkin' Donuts' employee Martin Redder ("Redder").   Upon the Officer's

request, Redder looked around inside the bakery and saw Petitioner on a pay phone. Officer Williams called Officer Mustico, and the two officers then watched as Petitioner walked out into the parking lot and waived his arms around, trying to attract a motorist's attention. The officers approached Petitioner and asked him his name, to which Petitioner responded "Dedric Golden." The officers then arrested him. T.T. 275-276, 285-287, 297-298.

At the police station, Petitioner told Officer Fish that he was familiar with 863 Magee Street because his cousin lived there, but that he had not gone to see his cousin that night. Officers searched several backyards in the area for a gun and some type of yellow fleece jacket, but found nothing. T.T. 289, 305-306.

### 2. The Defense's Case

Petitioner called Officer Michalko who testified that he was called to 863 Magee Street on the night of the crime and was positioned on the perimeter of the building to look for the shooter. He testified that he saw a man walking on West Fifth Street, into the perimeter, and that he spoke with this man whose clothing did not match the description given to him. T.T. 339-342, 346-347.

Petitioner testified in his own defense. He testified that his cousin, Thompson, lived on the second floor of 863 Magee Street and that he had been to Thompson's apartment about three times in the past month. He testified that when he had visited Thompson, he

was introduced to Samuels.  Petitioner maintained, however, that he was not at Thompson's apartment building on the night of the crime. He further testified that, at the time he was arrested, he was at Dunkin' Donuts and had seen his cousin, Rome's, car.  He testified that he ran outside to flag down Rome for a ride, but police arrested him first.  T.T. 363, 367, 379.

### 3.  Verdict and Sentence

On October 13, 2005, the jury found Petitioner guilty of first degree assault and two counts of third degree weapons possession, and not guilty of second degree weapons possession and injuring an animal.  T.T. 498-500.

On December 2, 2005, Petitioner was sentenced as a second violent felony offender to:  a determinate twenty-five year prison term, plus five years post-release supervision for the assault count;  a determinate seven year prison term, plus three years of post-release supervision for the first weapons possession count; and an indeterminate prison term of from three and one half to seven years for the remaining weapons possession count.  The terms were ordered to run concurrently.  Sentencing Mins. [S.M.] 7-8 (Resp't Ex. A, App. A at 196-197).

### C.  Direct Appeal

On September 22, 2006, Petitioner, through counsel, appealed his judgment of conviction.  The Appellate Division, Third Department unanimously affirmed Petitioner's conviction on February

22, 2007. <u>People v. Golden</u>, 37 A.D.3d 972 (3d Dept. 2007) (Resp't Ex. D); <u>lv. denied</u>, 9 N.Y.3d 844 (2007) (Resp't Ex. F.).

**D.   The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the evidence was legally insufficient and the verdict was not supported by the weight of the evidence; (2) the evidence of first degree assault was not legally sufficient and was not supported by the weight of the evidence; (3) the trial court improperly admitted bolstering testimony; (4) the trial court's reasonable doubt instruction was flawed; and (5) his sentence was harsh and excessive. <u>See</u> Pet. ¶ 22A-E (Dkt. #1).

**III. General Principles Applicable to Habeas Review**

**A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by

[the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);  see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).  The ways in which a state defendant may fairly

present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, © assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation. Id. at 194.

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris v. Reed, 489 U.S. 255, 262 (1989) (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. See id. It bears noting that "'actual innocence'

means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

**IV. Petitioner's Claims**

**1. Petitioner's Legal Sufficiency Claims are Procedurally Barred by an Adequate and Independent State Ground**

Petitioner contends, generally, in ground one of the petition that the evidence of his guilt was legally insufficient. See Pet. ¶ 22A. Specifically, he argues in ground two of the petition that the People failed to present legally sufficient proof that Parker sustained "serious physical injury"[1] in regard to the assault in the first degree conviction.[2] See Pet. ¶ 22B. Petitioner raised these claims on direct appeal, and the Appellate Division, Third Department rejected them on a procedural ground because they had

---

[1]    Penal Law § 120.10 [3] provides as follows: "A person is guilty of assault in the first degree when under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person."

[2]    Petitioner also argues at grounds one and two of the petition that the verdict was against the weight of the evidence. See Pet. ¶ 22A, B. However, challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence are not cognizable on federal habeas review. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from N.Y. Crim. Proc. L. ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, Petitioner's weight of the evidence claim, as he has raised it at grounds one and two of the habeas petition, is dismissed.

not been properly preserved for appellate review. <u>See</u> <u>Golden</u>, 137 A.D.3d at 973. Respondent argues that the state court's denial of these claims is based on an adequate and independent state ground, thereby rendering them procedurally barred from habeas review. <u>See</u> Resp't Mem., Point I at 13. A review of the record supports this view.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the judgment. <u>See</u> <u>Coleman</u>, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at C.P.L. § 470.05(2)) to deny Petitioner's claims because Petitioner had failed to properly preserve the sufficiency issue by seeking a trial order of dismissal at the conclusion of his case, specifically detailing the claimed deficiencies in the proof. <u>See</u> <u>Golden</u>, 37 A.D.3d at 973 (citing <u>People v. Lozada</u>, 35 A.D.3d 969, 970 (2006)). The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground. <u>See</u> <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990); <u>see</u> <u>also</u> <u>Garcia v. Lewis</u>, 188 F.3d 71, 79-82 (2d Cir. 1999). The Appellate Division, Third Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's legal sufficiency claims.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). "Cause" is defined as "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray, 477 U.S. at 488). To demonstrate prejudice, a petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Here, Petitioner has not made the required showing of cause and prejudice necessary to overcome the procedural default, nor has he demonstrated that this Court's failure to review his legal sufficiency claims will result in a miscarriage of justice.

Accordingly, grounds one and two of the petition provide no basis for habeas relief, and the claims are dismissed in their entirety.

## 2.  Petitioner's Bolstering Claim is Not Cognizable

Petitioner argues that the trial court erred in admitting bolstering testimony. In particular, he contends that the

reference by Officer Fish to having circulated a photo of Petitioner to patrol officers, and Officer Williams' testimony that he received and used such a photo in locating Petitioner improperly bolstered Samuels' identification of Petitioner. <u>See</u> Pet. ¶22D. Petitioner raised this claim on direct appeal, and it was rejected on the merits. <u>See</u> <u>Golden</u>, 137 A.D.3d at 974. As discussed below, this claim does not raise a federal constitutional issue and is therefore not cognizable by this Court on habeas review.

In general, state court rulings on evidentiary questions are a matter of state law and pose no constitutional issue. <u>James v. Senkowski</u>, 97 Civ. 3327 (DLC), 1998 U.S. Dist. LEXIS 5923 (S.D.N.Y. Apr. 29, 1998); <u>see</u> <u>also</u> <u>Simmons v. Ross</u>, 965 F. Supp. 473, 480 (S.D.N.Y. 1997); <u>Roberts v. Scully</u>, 875 F. Supp. 182, 189 (S.D.N.Y. 1995), <u>aff'd</u>, 71 F.3d 406 (2d Cir. 1995). "Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." <u>McCray v. Artuz</u>, 93 Civ. 5757 (LBS), 1994 U.S. Dist. LEXIS 15602 (S.D.N.Y. Nov. 3, 1994); <u>see</u> <u>also</u> <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924-25 (2d Cir. 1988). To determine whether a constitutional violation has occurred, a petitioner must show that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt

that would have existed on the record without it. In short, it must have been 'crucial, critical, highly significant'." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982) (internal quotations and citation omitted)).

While the practice of bolstering is prohibited in various states, including New York, it "is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial." Vega v. Berry, 90 Civ. 7044 (LBS), 1991 U.S. Dist. LEXIS 5675 (S.D.N.Y. Apr. 29, 1991); see also Snow v. Reid, 619 F. Supp. 579, 582 (S.D.N.Y. 1985). Similarly, courts in this circuit have repeatedly held that, "the concept of 'bolstering' really has no place as an issue in criminal jurisprudence based in the United States Constitution. It is at most a New York State rule or policy deriving from People v. Trowbridge." Bramble v. Smith, 96 Civ. 5905 (JFK), 1998 U.S. Dist. LEXIS 10494 (S.D.N.Y July 15, 1998); Snow, 619 F. Supp. at 582; see also Benitez v. Senkowski, 97 Civ. 7819 (DLC), 1998 U.S. Dist. LEXIS 15086 (S.D.N.Y. Sept. 17, 1998); Harris v. Hollins, 95 Civ. 4376 (HB), 1997 U.S. Dist. LEXIS 15910 (S.D.N.Y. Oct. 14, 1997); Malik v. Khoenan, 94 Civ. 8084 (LLS), 1996 U.S. Dist. LEXIS 3648 (S.D.N.Y. Mar. 26, 1996); Connolly v. Artuz, 93 Civ. 4470, 1995 U.S. Dist. LEXIS 22001 (E.D.N.Y. Sept. 15, 1995); Ayala v. Hernandez, 712 F. Supp. 1069, 1074 (E.D.N.Y

1989); accord Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978) ("This circuit has never regarded the practice [of bolstering] as inimical to trial fairness.").

Here, Petitioner's challenge to the admission of the testimony of Officers Fish and Williams raises a state law evidentiary issue and does not raise a federal constitutional question. Hence, there can be no habeas relief on this ground, and the claim is therefore dismissed.

**3.   Petitioner's Reasonable Doubt Claim is Not Cognizable and the Appellate Division's Rejection of the Claim was Not Contrary to Supreme Court Law**

Petitioner argues that the trial court's flawed reasonable doubt instruction deprived him of his right to due process. More particularly, he claims that the court's instruction improperly shifted the burden of proof. See Pet. ¶ 22C. Petitioner raised this claim on direct appeal, and it was rejected on the merits. See Golden, 137 A.D.3d at 974.

The adequacy of a state court's jury charge is a matter of state law and is not ordinarily grounds for habeas relief. United States ex rel. Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974). For a jury charge to give rise to federal habeas corpus relief, a petitioner must carry a heavy burden. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing

required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  The petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant under the Fourteenth Amendment . . . . The question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction itself so infected the entire trial process that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  In making this determination, a court "must consider the challenged portion of the charge not in 'artificial isolation,' but rather 'in the context of the overall charge.'" Justice v. Hoke, 45 F.3d 33, 34 (2d Cir. 1995) (quoting Cupp, 414 U.S. at 146-47).

The trial court gave the following reasonable doubt instruction, which forms the basis for Petitioner's claim:

> A doubt of the defendant's guilt, to be a reasonable doubt, must be a doubt for which some reason can be given.  A doubt, to be reasonable, must therefore arise because of the nature and quality of the evidence in the case, or from the lack or insufficiency of the evidence in the case.
>
> The doubt, to be a reasonable doubt, should be one which a reasonable person, acting in a matter of this importance, would be likely to entertain because of the evidence, or because of the lack or sufficiency of the evidence.

T.T. 455.

In particular, Petitioner objects to the "some reason" portion of the first sentence of the jury instruction, arguing that such language impermissibly shifted the burden of proof. See Pet. ¶ 22C.

Although some Second Circuit decisions have held that jury instructions that state or imply that jurors should be able to articulate a reason for their doubts are "not approved" and perhaps are "unwise," the Second Circuit has held that such an instruction does not violate due process. Chalmers v. Mitchell, 73 F.3d 1262, 1268 (2d Cir. 1997), cert. denied, 519 U.S. 834 (1996) (instruction defining reasonable doubt, in part, as "a doubt for which some good reason can be given" did not impermissibly alter the burden of proof); see also Pinto v. Stinson, 129 F.3d 114, 1997 U.S. App. LEXIS 29357, at *4 (2d Cir. 1997), cert. denied, 522 U.S. 1131 (1996). Moreover, the Supreme Court has never held that such an instruction is, in itself, violative of Due Process. See Taylor v. Kentucky, 436 U.S. 478, 488 (1978) ("Though perhaps not in itself reversible error," a state court's definition of reasonable doubt as "'a substantial doubt, a real doubt'" "often has been criticized as confusing.") (citing circuit cases).

The Court concludes similarly here. Read in its entirety, the jury charge properly defines the concept of reasonable doubt and explains the burden of proof. Moreover, the trial judge, in delivering the jury charge, reiterated numerous times, that the

People had the burden of proving Petitioner's guilt, thereby negating any implication that the "some reason" requirement placed a lesser burden of proof upon the state. T.T. 452-455. This Court cannot find that "viewed in the context of the overall charge," Cupp, 414 U.S. at 147, "'there is a reasonable likelihood that the jury . . . applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. 62, 72 (quoting Boyde, 494 U.S. 370, 380 (1990)). Considered as a whole, the instruction cures the error, if any, in the portions Petitioner challenges in his habeas petition. Thus, the trial court's reasonable doubt charge is in accord with due process constraints. As such, Petitioner's claim presents no basis for habeas relief, and the claim is dismissed.

## 4. Petitioner's Harsh and Excessive Sentence Claim is Not Cognizable

Petitioner contends that his sentence was harsh and excessive. See Pet. ¶ 22E. Petitioner raised this claim on direct appeal, and the Appellate Division, Third Department rejected it on the merits. See Golden, 37 A.D.3d at 974. As discussed below, this claim does not present an issue that is cognizable by this Court on habeas review.

It is well-settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The

[petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp 146 (E.D.N.Y. 1988), aff' mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Petitioner was sentenced as a second violent felony offender to the following concurrent terms: a determinate twenty-five year prison term, plus five years post-release supervision for the assault count; a determinate seven year prison term, plus three years of post-release supervision for the first weapons possession count; and an indeterminate prison term of from three and one half to seven years for the remaining weapons possession count. S.M. 7-8 (Resp't Ex. A, App. A at 196-197). These terms are within the ranges prescribed by New York law. See Penal Law § 70.04(3)(a).

Accordingly, Petitioner's claim does not present any grounds for habeas relief, and the claim is dismissed.

## V.    Conclusion

For the reasons stated above, the petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      November 1, 2010
            Rochester, New York